1

2

3

4 **UNITED STATES DISTRICT COURT**

5 **DISTRICT OF NEVADA**

6 * * *

7 UNITED STATES OF AMERICA,                    )
                                               )
8                    Plaintiff,                )
                                               )
9 v.                                           )      2:05-cr-0073-RLH-LRL
                                               )      Motion to Suppress (#16)
10 JASON TODD KINDLE,                          )
                                               )
11                  Defendant.                 )
                                               )
12 _____ )

13 **REPORT & RECOMMENDATION**

14          The defendant, Jason Todd Kindle, awaits trial on an Indictment charging him with Felon

15 in Possession of a Firearm, *viz*., a Colt .22 caliber pistol, in violation of 18 U.S.C. §§ 922(g)(1)

16 and 924(a)(2).   The North Las Vegas Police (NLVPD) seized the pistol from the trunk of

17 Kindle's car following a traffic stop on November 24, 2004.   Before the court is Kindle's

18 Motion to Suppress Firearm and Statements (#16), in which he challenges the legality of the

19 automobile inventory search that led to the discovery and seizure of the Colt 22.   Having

20 considered the motion, the government's Response (#20), and the evidence and the arguments

21 of counsel presented at the hearing on November 28, 2005, the undersigned submits this Report

22 & Recommendation.

23                                     **THE FACTS**

24          Based on the testimony adduced at the hearing, the court finds the following facts.   On

25 the afternoon of November 24, 2004, between 4:30 and 5:00 p.m., NLVPD Off. Eric Newson

26 effected a traffic stop on a Ford Tempo for failure to yield the right of way at the intersection

of Balzar Avenue and Martin Luther King Boulevard in North Las Vegas.[1]  The sole occupant

of the Tempo was the defendant, Jason Kindle, an African American male in his mid-30s.

Although Kindle produced a valid driver's license, vehicle registration and proof of insurance,

it appeared to Off. Newson that Kindle was "extremely nervous and anxious."  In response to

Newson's questions, Kindle said he had been living with his girlfriend on Paradise Valley

Avenue for more than a year, and that when he was stopped he was on his way to the DMV

office at Carey and Rancho.  Newson asked why he was going this way, since it wasn't the most

direct route to the DMV.  Kindle explained he wanted to avoid the heavy rush-hour traffic on

Lake Mead Boulevard (which, the court notes, would have been only a slightly more direct

route).  According to Off. Newson, the area through which Kindle had just driven, "Vegas

Heights," was known for its gang and drug-related activity.  Based on the foregoing, Off.

Newson called for back-up.  A short time later Off. Freeman arrived.  Off. Newson directed

Kindle to step out of his vehicle and move to the front of the patrol car, where Newson

handcuffed him and patted him down for weapons.  Kindle was unarmed.  Newson asked

whether there were guns or drugs in the car.  Kindle said there were not.  Newson asked whether

Kindle would allow him to search the car.  Kindle said he would not, because he was doing

nothing wrong.  Though Kindle was unarmed, Newson did not remove the handcuffs.

Approximately ten minutes later, in response to Newson's request for a records check,

dispatch reported that Kindle was a convicted felon for assault on a police officer.  Off. Newson

noted that the address provided by dispatch at which he was currently registered was not the

address at which he said he'd been living with his girlfriend, Angela Gardner, for more than a

year.  Consequently, Off. Newson formally arrested him for Ex-Felon Failure to Change

Address and for Failure to Yield the Right of Way.  As Newson was making arrangements to

have Kindle's automobile towed to an impound lot, Kindle asked whether Newson could simply

---

[1]  Kindle does not contest the legality of the traffic stop.

1  release the car to Ms. Gardner.  Newson said no because there wasn't enough time.  At the

2  hearing Newson explained that due to the high volume of calls received by patrol officers, the

3  police try to handle each citizen contact as expeditiously as possible, and, if they can, spend no

4  more than fifteen minutes on each call.  Due to the heavy rush hour traffic, Newson believed

5  that Kindle's girlfriend would be unable to respond to the scene and retrieve the car in such a

6  short period of time.  Hence, the car was towed.  In preparation for the tow, Newson inventoried

7  the vehicle's contents.  In the trunk he found the Colt .22 that is the subject matter of this

8  prosecution.  After being given his *Miranda* warnings, Kindle admitted he bought the gun on

9  the street for $200.

10                                          **DISCUSSION**

11        Kindle contends that the Colt .22 should be suppressed because the inventory search of

12  his vehicle was constitutionally flawed.[2]  Specifically, Kindle contends that Off. Newson

13

14        [2] Kindle also complains that he had been subjected to an unlawful investigative detention.  The
court need not reach this question, because the court finds that during the period of the alleged unlawful

15  detention nothing incriminating was seized or said.  Nor can it be said that the seizure of the Colt .22 was the
fruit of the alleged unlawful detention -- it was seized during an inventory search of Kindle's vehicle

16  following a valid arrest.  Moreover, as the government noted at oral argument, the detention was not
"investigative."  According to Off. Newson, the detention was solely for reasons of "officer safety."

17  Nevertheless, Kindle's "detention" is troubling.  The court recognizes that routine traffic stops are fraught
with potential danger.  Indeed, in *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977), the Supreme Court

18  held that during a routine traffic stop a police officer may order a person out of an automobile and frisk that
person for weapons if the officer reasonably believes that the person is armed and dangerous.  The question

19  is whether Off. Newson had a "*reasonable* belief based on 'specific and articulable facts which, taken
together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing" that

20  Kindle was an armed and dangerous individual.  *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)(quoting

21  *Terry v. Ohio*, 392 U.S. 1, 21 (1968)(emphasis added)).  The stop in this case took place in the daylight of
the afternoon in a well trafficked area, not in the dead of night on a lonely road; Kindle, an African

22  American male in his mid-30s, was the sole occupant of the vehicle; he had not disregarded Newson's
directive to stop his vehicle; he was not hostile or aggressive or under the influence of drugs or alcohol; he

23  neither made a suspicious move toward, nor refused to remove his hand from, any part of his clothing; nor
did Newson see a weapon-like bulge in Kindle's clothing.  In reality, Kindle was polite and cooperative,

24  produced a valid driver's license, registration and proof of insurance, and answered Newson's questions.
This was not a situation in which Off. Newson had pulled Kindle over because he suspected Kindle of

25  engaging in criminal conduct, especially criminal conduct for which he would likely be armed.  This was
simply a routine traffic stop.  The only reasons Newson offered for suspecting that Kindle was armed and

26  dangerous were that Kindle appeared nervous, and had driven through a residential neighborhood which had

1 violated NLVPD's inventory policy in two respects: (1) he impounded Kindle's vehicle without

2 first attempting to release it to Kindle's girlfriend, as Kindle had requested; and (2) his

3 inventory of the contents of Kindle's vehicle failed to include every item of personal property

4 that was in the vehicle.  The government argues, in effect, that Newson substantially complied

5 with the NLVPD inventory policy, and that suppression is therefore not required.

6         After effecting a lawful arrest, the police may conduct an inventory search of property

7 in the arrestee's possession -- in this case an automobile -- without a warrant.  *South Dakota v.*

8 *Opperman*, 428 U.S. 364, 369 (1976).  An inventory search serves three purposes: "the

9 protection of the owner's property while it remains in police custody; the protection of the

10 police against claims or disputes over lost or stolen property; and the protection of the police

11 from potential danger."  *Id*. (citations omitted).  Such a search is reasonable under the Fourth

12 Amendment as a routine administrative caretaking function of the police, so long as it is not a

13 subterfuge for a warrantless investigatory search without probable cause, *Florida v. Wells*, 495

14 U.S. 1, 3 (1990), and so long as it complies with "standardized criteria," *Colorado v. Bertine*,

15 479 U.S. 367, 375 (1987), or "established routine."  *Illinois v. Lafayette*, 462 U.S. 640, 648

16 (1983).

17         The police are not required to use the least intrusive means to secure the property in

18 question.  In *Illinois v. Lafayette*, the Illinois Appellate Court had held that the search of the

19 defendant's shoulder bag was not a valid inventory search because the bag could easily have

20 been secured by sealing it in a plastic bag and placing it in a secured locker.  The Supreme

21 Court observed:

22 . . .

23 _____

24 a significant crime problem.  The court finds that on this basis alone it was not apparent that Kindle was
armed and dangerous, especially after he was ordered out of the car, was handcuffed and frisked, and was

25 found to be *unarmed*.  Yet he remained handcuffed in the presence of two officers for at least ten minutes
while the officers awaited a response to their request for a records check.  *Compare United States v. Brown*,

26 273 F.3d 747, 748-49 (7th Cir. 2001); *United States v. Holmes*, 385 F.3d 786, 789-90 (D.C. Cir. 2004).

1
2
3

> Perhaps so, but the real question is not what could have been achieved, but whether the Fourth Amendment *requires* such steps; it is not our function to write a manual on administering routine, neutral procedures of the station house.  Our role is to assure against violations of the Constitution.

4
5

> The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means.

6  *Lafayette*, 462 U.S. at 647 (emphasis in original)(quotation marks omitted).

7       Kindle complains that Off. Newson should have given Kindle's girlfriend, Angela

8  Gardner, an opportunity to come to the scene and take possession of the vehicle, as Kindle had

9  requested.  A similar argument was rejected in *United States v. Kimes*, 246 F.3d 800 (6th Cir.

10  2001).  There, the defendant argued that the arresting officers should not have towed his truck

11  before calling the defendant's wife and asking her to come and pick it up.  The court noted that

12  the defendant "cite[d] no authority compelling such a conclusion, and we are aware of none."

13  *Id*. at 805.  Likewise in *United States v. Skillern*, 947 F.2d 1268 (5th Cir. 1991), the defendant

14  contended that the officer's decision to impound the vehicle was unreasonable because he didn't

15  ask the driver, who had been stopped for speeding and arrested for having no driver's license

16  or proof of insurance, whether he wanted a passenger to take custody of the vehicle. *Id*. at 1270.

17  Following *Colorado v. Bertine, supra*, the court rejected the argument.  In *Bertine*, the Colorado

18  Supreme Court had found a violation of the defendant's Fourth Amendment rights "because

19  Bertine himself could have been offered the opportunity to make other arrangements for the

20  safekeeping of his property" besides impoundment. *Colorado v. Bertine*, 479 U.S. at 373.  The

21  U.S. Supreme Court concluded "that here, as in *Lafayette*, reasonable police regulations relating

22  to inventory procedures administered in good faith satisfy the Fourth Amendment, even though

23  courts might as a matter of hindsight be able to devise equally reasonable rules requiring a

24  different procedure." *Id*. at 374. *See also United States v. Mayfield*, 161 F.3d 1143, 1144 (8th

25  Cir. 1998).  It is therefore apparent that the Fourth Amendment did not require Off. Newson to

26  choose means less intrusive than impoundment to secure the vehicle.

1    Kindle nevertheless argues that Off. Newson's refusal to contact Ms. Gardner violated

2  NLVPD's own policy regarding vehicle impounds.  Section 9.34.00 of the NLVPD Policy

3  Manual provides, among other things, that when the safekeeping of a vehicle is at issue due to

4  the arrest of the vehicle's owner, "the officer will ascertain if a friend or relative is reasonably

5  available to take custody of the vehicle....  If ... another is not reasonably available, the vehicle

6  will be impounded for safe keeping." *See* Exhibit A, Manual at p. 9-44.  Newson testified that

7  he declined to contact Kindle's girlfriend because he believed it would take her too long during

8  the rush hour to retrieve the car.  In other words, it was Off. Newson's judgment call that Ms.

9  Gardner was not "reasonably available to take custody of the vehicle."  The court will not

10  quarrel with Newson's judgment in that regard, especially since there is no evidence in the

11  record that the decision to impound the vehicle was a subterfuge for a warrantless investigatory

12  search.  Accordingly, the court finds that Off. Newson's failure to contact Ms. Gardner did not

13  amount to a violation of NLVPD's vehicle impound policy.

14    Kindle contends that Offs. Newson and Freeman further violated NLVPD's inventory

15  policy by failing to include on the written inventory form every piece of personal property that

16  was in the vehicle.  The NLVPD's vehicle impound policy reads, in pertinent part: "It is the

17  policy of this Department that whenever a vehicle is impounded, the officer will thoroughly

18  search the vehicle and all containers within and make an inventory of *all* personal property on

19  the appropriate NLVPD form." *See* Exhibit A, Manual at p. 9-43 (emphasis added).

20    Here, the inventory form, which is attached to the government's Response (#20) as

21  Exhibit 2, lists a cell phone, front and back license plates, a crow bar, and a hammer, which,

22  according to Off. Newson's testimony, are the only items he saw in the trunk.  Newson admitted

23  there was miscellaneous paperwork in the vehicle's console that was not, but should have been,

24  listed on the inventory form.  Ms. Gardner testified at the hearing that there were other items

25  in the trunk as well, including a large flashlight, a set of jumper cables, three bottles of motor

26  oil, and a bag of tools.  Based on the foregoing, the court finds that it is likely that certain items

6

1   of personal property that were in the car were not listed on the inventory form.  The failure to

2   list "all personal property" within the vehicle constitutes a violation of the literal terms of the

3   NLVPD policy.  The question is whether under the circumstances of this case the officers'

4   failure to list certain items of personal property in the car amounted to a violation of the Fourth

5   Amendment.  The court concludes it did not.

6           Inventory searches are reasonable when they are conducted
            according to standardized police procedures.  Compliance with
7           procedures merely tends to ensure the intrusion is limited to
            carrying out the government's caretaking function.  This does not
8           mean that inventory searches are always unreasonable when
            standard procedures are not followed.
9

10  *United States v. Mayfield*, *supra*, 161 F.2d at 1145 (citations omitted)(court upheld inventory

11  begun at scene but not completed as it should have been, where no bad faith by police and

12  inventory search not pretext for general search).

13          In *United States v. Rowland*, 341 F.3d 774 (8th Cir. 2003), the police listed on the

14  inventory form only those items they considered potential evidence.  The court stated:

15           [I]t is our opinion by failing to make a record of all property
            within the vehicle, law enforcement failed to follow its own
16          procedures and thus did not conduct the search pursuant to
            "standardized police procedures." *Opperman*, 428 U.S. at 376 ....
17          This is not dispositive, however.

18           Even when law enforcement fails to conduct a search according
            to standardized procedures, this does not mandate the suppression
19          of the evidence discovered as a result of the search. *E.g.*, *United
            States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998).
20          "Compliance with procedures merely tends to ensure the intrusion
            is limited to carrying out the government's caretaking function."
21          *Id*.  There must be something else; something to suggest the police
            raised "the inventory-search banner in an after-the-fact attempt to
22          justify" a simple investigatory search for incriminating evidence.

23  *United States v. Rowland*, 341 F.3d at 780.

24          In *Rowand*, there was clear evidence the police used the inventory search as a subterfuge

25  for a purely investigative search.  Here, there is no evidence the police were attempting after the

26  fact to dress an investigatory search in inventory search clothing.  When Off. Newson learned

1  that Kindle had not re-registered as a convicted felon at his current residence in over a year, he

2  formally arrested Kindle.  Pursuant to standardized NLVPD policy, Newson called for a tow

3  truck in order to impound Kindle's car.  Before the car was towed, Newson undertook an

4  inventory search, during the course of which he discovered a Colt .22 in the trunk.  Although

5  Newson may not have inventoried every item of personal property in the car, nothing in this

6  record suggests that he conducted a general investigative search for incriminating evidence, or

7  that he otherwise acted in bad faith.  Suppression, therefore, is not required.

8                                   **RECOMMENDATION**

9          Based on the foregoing, it is the recommendation of the undersigned United States

10  Magistrate Judge that Kindle's Motion to Suppress Firearm and Statements (#16) should be

11  denied.

12          DATED this 3rd day of January, 2006.

13

14  _____

15  **LAWRENCE R. LEAVITT**
    **UNITED STATES MAGISTRATE JUDGE**

16

17

18

19

20

21

22

23

24

25

26

8